NOTICE

Decision filed 11/29/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230773-U

NO. 5-23-0773

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 23-CF-1598 |
| | ) | |
| RYAN W. ALAMIA, | ) | Honorable |
| | ) | Sara L. Rice, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Welch and McHaney concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court's findings that the defendant posed a real and present threat to the safety of any person or the community and that no less restrictive conditions would avoid the real and present threat to the safety of any person or the community were not against the manifest weight of the evidence, and the court's order of detention is affirmed.

¶ 2 The defendant, Ryan W. Alamia, appeals the trial court's order denying the defendant's pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL

_____
[1]The Act has been referred to as the "SAFE-T Act" or the "Pretrial Fairness Act." Neither name is official, as neither appears in the Illinois Compiled Statutes or public act. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

1

129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For reasons that follow, the order of detention is affirmed.

¶ 3    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), as amended by the Act. 725 ILCS 5/art. 110 (West 2022). Under the Code, a defendant's pretrial release may only be denied in certain statutorily limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2022). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e), (f) (West 2022). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes the defendant poses a real and present threat to the safety of any person or the community (725 ILCS 5/110-6.1(a)(1)-(7) (West 2022)) or there is a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8) (West 2022)).

¶ 4    The Code provides a nonexclusive list of factors that the trial court may consider in making a determination of dangerousness, *i.e.*, that the defendant poses a real and present threat to any person or the community. 725 ILCS 5/110-6.1(g) (West 2022). In making a determination of dangerousness, the trial court may consider evidence or testimony as to factors that include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed

2

to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)). 725 ILCS 5/110-6.1(g) (West 2022).

¶ 5    If the trial court finds that the State proved a valid threat to the safety of any person or the community and/or defendant's likely willful flight to avoid prosecution, or defendant's failure to abide by previously issued conditions of pretrial release, the trial court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2022). In reaching its determination, the trial court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant;[2] (4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725

---

[2]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2022).

3

ILCS 5/110-5(a) (West 2022). The statute lists no singular factor as dispositive. 725 ILCS 5/110-5(a) (West 2022).

¶ 6    If the trial court determines that the defendant should be denied pretrial release, the court is required to make written findings summarizing the reasons for denying pretrial release. 725 ILCS 5/110-6.1(h) (West 2022). The trial court's determination regarding pretrial release will not be reversed absent an abuse of discretion. See *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977); *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15 (setting similar standard of review for the sentence imposed on the defendant after the trial court's consideration of statutory factors and evidence presented at sentencing). Likewise, questions regarding whether the trial court properly considered one or more of the statutory factors in determining dangerousness and/or conditions of release are reviewed for an abuse of discretion. See *People v. Simmons*, 2019 IL App (1st) 191253, ¶¶ 9, 15 (in considering trial court's decision to deny bail, the reviewing court will not substitute its judgment for that of the trial court merely because it would have balanced the appropriate factors differently). An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court. *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 7    Additionally, the trial court's finding that the State presented clear and convincing evidence showing that mandatory conditions of release would fail to protect any person or the community, and/or that the defendant had a high likelihood of willful flight to avoid prosecution, or that the defendant failed to comply with previously issued conditions of pretrial release thereby requiring a modification or revocation of the previously issued conditions of pretrial release will not be reversed unless those findings are against the manifest weight of the evidence. See *In re C.N.*, 196 Ill. 2d 181, 208 (2001) (setting a similar standard of review for requirement of clear and convincing

4

evidence by the State in juvenile proceedings). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). "Under the manifest weight standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the [defendant] and witnesses." *Deleon*, 227 Ill. 2d at 332.

¶ 8      On September 15, 2023, the defendant was charged by information in St. Clair County with one count of aggravated domestic battery offenses against a household member, Angel Mitchell (720 ILCS 5/12-3.3(a) (West 2022)), a Class 2 felony, and two counts of domestic battery— subsequent offense, against Angel Mitchell (720 ILCS 5/12-3.2(a)(2) (West 2022)), a Class 4 felony. When the charges were filed, the defendant was not in custody. A circuit court judge issued a warrant of arrest and set the defendant's bond at $50,000. The defendant was subsequently arrested and taken into custody. The defendant's initial appearance was held on September 18, 2023. At that time, the trial court appointed the public defender to represent the defendant, and the State filed a verified petition for pretrial detention. The State alleged that the defendant was charged with a detainable offense, aggravated domestic battery, and that pretrial release would pose a real and present threat to the safety of persons or the community.

¶ 9      The State's petition was called for a hearing on September 19, 2023. Following the presentations and arguments of counsel, the trial court entered a written order of pretrial detention. The court found by clear and convincing evidence that the proof is evident or the presumption great that the defendant committed a detainable offense, that the defendant posed a real and present danger or threat to the safety of persons or the community, that no condition or a combination of conditions could mitigate the real and present threat the defendant posed to those persons or the

community, and that less restrictive conditions would not ensure the safety of the community or ensure the defendant's appearance in court. The defendant filed a timely notice of appeal. Ill. S. Ct. R. 604(h) (eff. Sept. 18, 2023).

¶ 10     In the *pro se* notice of appeal, the defendant claimed that the trial court's order denying pretrial release was in error and he requested pretrial relief. The defendant argued that the State failed to prove by clear and convincing evidence that the proof was evident or the presumption great that he had committed a qualifying offense. In support, the defendant asserted that the State offered no proof that the victim sustained fractured ribs or great bodily harm. The defendant further argued that the State failed to prove by clear and convincing evidence that he posed a real and present threat to any person or the community, and that there were no conditions that could reasonably ensure his presence at future hearings. The State Appellate Defender was appointed to represent the defendant on appeal. The State Appellate Defender filed a "Notice In Lieu Of Rule 604(h) Memorandum," advising that after reviewing the record on appeal, the defendant would not file a memorandum pursuant to Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023). Therefore, we will review those claims of error asserted in the defendant's notice of appeal.

¶ 11     The State filed a response to the defendant's claims of error. The State argued that it proved, by clear and convincing evidence, that the proof was evident or the presumption great that the defendant had committed a qualifying offense, that the defendant posed a real and present threat to the safety of a person or the community, and that no less restrictive condition would effectively mitigate the real and present threat that the defendant presented. Additionally, the State pointed to its proffer, consisting of the Caseyville Police Department's interview with the victim and a review of the pretrial report, and argued that the proffer was sufficient to show that detention of the defendant was necessary to provide for the safety of persons or the community based upon the

6

specific articulable facts of the case. Finally, the State argued that the trial court's finding that the State established, by clear and convincing evidence, that mandatory conditions of release would fail to protect any person or the community in this case was not against the manifest weight of the evidence, particularly where the trial court found that the defendant's "criminal history involving a number of domestic violence charges" made him a real and present threat and supported the denial of pretrial release.

¶ 12 The record reveals that the State's verified petition for pretrial detention was called for hearing on September 19, 2023. The defendant was represented by his court-appointed counsel. During the hearing, the State presented a proffer in support of its petition. First, the State pointed out that the defendant was charged with aggravated domestic battery and that this was a qualifying, detainable offense. The State then offered information provided by the Caseyville Police Department. On September 7, 2023, the Caseyville Police Department was informed that Angel Mitchell may have been a victim of a domestic battery in her home. Officers were dispatched to Anderson Hospital to interview Angel. During the interview, Angel stated that she and the defendant got into a verbal altercation, and then the defendant started punching her with a closed fist. Angel thought the defendant "hit her four or five times." She thought she lost consciousness. Angel also reported that the defendant dragged her through the trailer by her hair, yanking a big chunk of hair from her head. The State noted that thumbnail photos, attached to the police report, showed the area where hair had been torn from the victim's head. Angel informed the officers that she had "sustained two fractured ribs and a hole in her lung otherwise known as a pneumothorax." She also informed the officers that the defendant "had just gotten out of prison" and was staying with her.

7

¶ 13    The State noted that a pretrial report had been prepared which indicated the defendant was on parole for aggravated fleeing and eluding at the time he committed the new offenses. The State further noted that the defendant had a prior domestic battery conviction in St. Clair County (06-CM-2191). He had also been convicted of domestic battery with bodily harm in Madison County (16-CF-1173) and sentenced to two years in the Illinois Department of Corrections. The pretrial report also indicated that the defendant had several other convictions, including a conviction for aggravated domestic battery with strangulation, a Class 2 felony, in 2021, convictions for domestic battery with bodily harm in 2016, 2014, and 2011, and a conviction for violation of a protective order in 2008. The State then argued that based upon the defendant's prior convictions for domestic battery, detention was warranted.

¶ 14    In response to the State's proffer, counsel for the defendant called the defendant's sister, Katie Hillyer, as a witness. Katie testified that on September 6, 2023, in the middle of the night, she picked up the defendant and Angel on a side street near a trailer park. Katie took the two of them to a Moto Mart in Collinsville. Katie noticed that Angel was very dirty and "had a large gash on her leg." Katie recounted a conversation she had with Angel while the defendant was inside the Moto Mart. Angel said that she and the defendant had been running through a field with "high weeds." Angel thought she had broken ribs. Katie suggested that Angel needed to go to the hospital. Angel then explained that while running through the field, she had fallen down several times, and that if "she hadn't been wearing the sandals, she wouldn't have fallen down so many times." After that exchange, Katie took the two of them back to her house. On the way, Angel was "kind of falling asleep in the back seat." While they were at Katie's house, it was then decided that Katie would take Angel and the defendant back to Angel's trailer. Katie testified that Angel never

8

indicated she was afraid of the defendant. Angel never said that the defendant had been beating her. According to Katie, Angel was "overly affectionate to" the defendant.

¶ 15 During cross-examination, Katie reiterated that she did not witness any altercation between the defendant and Angel on the night of September 6. Katie acknowledged that the defendant had been convicted, in the past, of domestic battery.

¶ 16 At the conclusion of Katie's testimony, defense counsel made a proffer, presenting additional facts to supplement the testimony. Defense counsel explained that Angel had taken over the payments on a friend's car after that friend moved to Alaska. On the night in question, someone came to repossess the car. There was an altercation between the defendant and the "repo man." Angel and the defendant thought that the repo man had called the police because of the altercation. The defendant had just been released from prison. He feared that the police would arrest him, so he and Angel "took off running." They ran through some fields and then Katie picked them up. At no time did Angel indicate the defendant had beaten her. In fact, text messages from Angel to Katie indicated that the defendant had not beaten Angel. The defendant argued that based upon this evidence, the State did not meet its burden of proof by clear and convincing evidence.

¶ 17 At the conclusion of arguments, the trial court first found, by clear and convincing evidence, that the proof was evident and the presumption great that the defendant committed a qualifying offense, that being the aggravated domestic battery, and two counts of domestic battery —subsequent offense. The trial court then considered the pertinent statutory factors regarding the determination of dangerousness, including the defendant's prior history involving domestic violence. The trial court found that the State had proved by clear and convincing evidence that the defendant posed a real and present danger or threat to the safety of any person or persons or the community, that there was no condition or a combination of conditions that would mitigate the

real and present threat that the defendant posed to persons or the community, and that less restrictive conditions would not ensure the safety of the community or ensure the defendant's appearance in court. The defendant was ordered detained as it was necessary to avoid the real and present threat or danger to any person, "in particular, that being the alleged victim, Angel Mitchell, as noted in the criminal information filed in this matter."

¶ 18    Based on our review of the record, and any memoranda submitted, we find that the trial court's finding that the defendant met the dangerousness standard, posing a real and present threat to the safety of any person or persons in the community was not against the manifest weight of the evidence; and that the trial court's determination that no less restrictive conditions would avoid the real and present threat to the safety of any person or the community was not against the manifest weight of the evidence.

¶ 19    We have thoroughly reviewed the record on appeal and conclude it does not demonstrate that the trial court's order denying pretrial release was an abuse of discretion. Accordingly, the trial court's order is affirmed.

¶ 20    Affirmed.